IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SARAH JOHNSON and REBEKAH JOHNSON | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 2:18−cv−00068−JRS−MJD |
| NORTHEAST SCHOOL CORPORATION | ) | |
| and NORTH CENTRAL HIGH SCHOOL, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
_____

Defendants, Northeast School Corporation and North Central High School (collectively "School") submit this Reply to Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment.

## I.     INTRODUCTION

Sarah is trying to hold the School liable for not immediately expelling or suspending Garrett after Leslie reported Sarah was the victim of an alleged off-campus sexual assault, which allegedly occurred almost one year prior to the report and which law enforcement found unsubstantiated based on Sarah's forensic interview. While the School did not acquiesce to Leslie's immediate and unreasonable demands, the School took the matter very seriously and, among other measures, immediately issued a no-contact order between Sarah and Garrett and attempted to conduct an investigation. However, Garrett and Sarah repeatedly refused to provide statements to the School.[1]

Further, as more fully explained in Defendants' initiating brief, the School promptly addressed each purported act of harassment reported to the School after November 5, 2015—the

---

[1] They were the only two witnesses to the alleged rape attending the School as Romeo was no longer attended the School.

first of which allegedly involved did not occur until February, 2016.  While Leslie, who made several false assertions after reporting the "rape," strongly lobbied to have Garrett expelled, the School was not legally required to take any specific action simply because it was requested.  Instead, the School acted reasonably (and certainly not in a clearly unreasonable manner) in light of the known and undisputed facts.  The reasonableness of the School's actions include, but are not limited to, issuing a no-contact order, consistent communication with law enforcement, seeking legal advice throughout the duration of the post-reporting 2015-16 school year, offering several times to interview Sarah, prompt investigation of all complaints made by Sarah and Leslie, providing home bound classes by a licensed female instructor to Sarah, exempting her from final exams, and offering unfettered access to the School's guidance counselor.

Additionally, Rebekah is trying to hold the School liable despite her admission that she did not endure any sexual harassment or discrimination and despite the fact that she was removed from school by Leslie against her wishes.

Because the School established it was entitled to summary judgment, Plaintiffs were required to set forth specific facts showing a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiffs' Response does not proffer sufficient evidence to carry this burden.[2]

## II.    OBJECTIONS TO INADMISSIBLE EVIDENCE DESIGNATED BY PLAINTIFFS AND PORTIONS OF PLAINTIFFS' RESPONSE

*Declaration of Esther Warkov (ECF 59-10)*

Plaintiffs portray Esther Warkov as a Title IX expert on student rights and the impact of sexual assaults on students.  (Plt. Resp. Br., p. 13-14).  Plaintiffs were required to disclose expert witnesses and Fed. R. Civ. P. 26(a)(2) reports by no later than April 5, 2019.[3]  (ECF 30, III.F).

---

[2] Plaintiffs did not oppose summary judgment on the State law claim.
[3] Plaintiffs did not move to extend the expert disclosure deadline nor seek leave to belatedly disclose Warkov.

While still not compliant with F.R.C.P. 26(a)(2), Plaintiffs' Response first disclosed Warkov on May 10, 2019. (ECF 58).  Warkov also was not identified on Plaintiffs' preliminary witness list. (ECF 24).  Warkov's declaration and accompanying exhibits must be stricken because she was not timely disclosed as an expert and allowing her testimony is prejudicial to the School.  *Finley v. Marathon Oil Co.*, 75 F.3d 1225 (7th Cir. 1996) (excluding an expert witness who was designated months after the expert disclosure deadline and citing Fed. R. Civ. P. 37(c)(1) in holding that a failure to disclose the identity of a witness pursuant to Rule 26(a) or (e) requires automatic and mandatory exclusion unless the party proffering the witness can show its violation was harmless); *see also CEG Holdings, Inc. v. Lasco Bathware, Inc.*, 2009 WL 10688088, *4 (S.D. Ind. 2009) (denying plaintiff's motion to extend the expert discovery deadline because "the judge has a right to assume that deadlines will be honored. The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines. If the court allows litigants to continually ignore deadlines and seek neverending extensions without consequence, soon the court's scheduling orders would become meaningless.").

Additionally, Warkov does not meet the requirements of Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, (1993).  She is not qualified as an expert in a relevant field and her declaration is unreliable and not helpful to the court.  Her educational background, publications, lectures, teaching experience and fieldwork is restricted exclusively to the field of *music*.  (ECF 59-10, Exh. A).  While her CV lists "Civil rights advocacy" in the field of Title IX under "Other Professional Experience," this generic listing fails to provide the knowledge, skill, experience, training, or education required by Rule 702 to qualify as an expert with respect to sexual assaults and Title IX.  Moreover, declaration paragraph 1 very generally speaks to Stop Sexual Assault in School's mission and involvement, but does address any education, training or experience in this field.  Paragraphs 5-9 all contain statements related to her opinion about the requirements of Title

3

IX, her opinion about whether the School violated Title IX administrative regulations, and immaterial personal opinions.  Warkov is unqualified to provide such opinions.  Moreover, her interpretation of Title IX and whether the School violated Department of Education administrative regulations is immaterial and provides no assistance to an understanding of the evidence or any determine to be made by the court.  Further, as stated in the section below, the School's alleged violation of Department of Education administrative regulations is immaterial to Title IX liability.

Even if Warkov was providing lay testimony, her lay testimony should be stricken because it is either immaterial or inadmissible hearsay.  Paragraph 4 is immaterial to any dispositive issue and cites no source for such a conclusion.  Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.  *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).  Fed. R. Evid. 802 bars admission of hearsay-which is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Warkov attaches email communications she sent to Dr. Baker as declaration exhibits B and C. (ECF 59-10, ¶ 3).  These email communications are inadmissible out of court statements introduced for the purpose of demonstrating the School's alleged violation of Title IX and fit within no hearsay exception.

A.  *The OCR Report (ECF 59-8) Is Unauthenticated, Immaterial, and Inadmissible Hearsay*

Plaintiffs designate the OCR report for the purposes of establishing the School's response to the reported sexual assault was deliberately indifferent. (ECF 58, p. 6, 12-13).  The OCR report is not properly authenticated, as required by Fed. R. Evid. 901, and must be stricken.  *Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) (a report in the record with no supporting affidavit to verify its authenticity is inadmissible and cannot be considered for summary judgment purposes).  Plaintiffs have not provided any evidence sufficient to support a finding that the OCR Report is what the Plaintiffs claims it is.  Instead, Plaintiffs attempt to bring the report in through the back

door by designating part of Dr. Baker's deposition testimony where Plaintiffs' counsel states, "I'll

hand you what's been marked as Plaintiff's Exhibit 2, which I'll represent to you is a report of the

US Department of Education, Office of Civil Rights dated March 23, 2018. " (ECF 59-7, p. 3).  This

statement of counsel does not authenticate the report.  Because Plaintiffs have not designated an

affidavit verifying the OCR Report's authenticity, the document is inadmissible and cannot be

considered for purposes of summary judgment.  *Scott*, 346 F.3d at 759; *Haywood v. Lucent Techs.,

Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (To defeat summary judgment, the evidence must be of a

type admissible at trial.)

Even if the OCR Report was admissible, it immaterial to Title IX liability.  The standard for

a private right of action under Title IX is much narrower than the standards imposed by the OCR to

establish non-compliance with Department of Education regulations.  The OCR requires a school to

respond to harassment that "It Knows or Should Have Known." (ECF 59-8, p. 3).  The OCR

implements a constructive knowledge, negligence-type burden on education institutions, which the

United States Supreme Court has expressly rejected in such cases.  *See Davis*, 526 U.S. at 642

(rejecting premise that a school's liability for failing to react to harassment of which it "should have

known.").   Indeed, liability can only flow from a school's deliberate indifference to sexual

harassment "of which it had **actual knowledge**."  *Id.* (emphasis added).  Plaintiffs' reliance on the

School's alleged violation of federal regulations fails to raise a genuine issue of material fact as to

Title IX civil liability.  See *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1989)

("Defendant's alleged failure to comply with 34 C.F.R. 106.8(b) does not establish actual notice and

deliberate indifference. And in any event, the failure to promulgate a grievance procedure does not

itself constitute "discrimination" under Title IX…The Department of Education can enforce the

requirement administratively, but the implied private right of action under Title IX does not allow

recovery in damages for violations of those administrative requirements."); *Seamons v. Snow*, 84

F.3d 1226, 1233 (10th Cir. 1996) (A school's failure to adopt Title IX grievance procedures was not itself an act of discrimination based on sex.)

      *B.  Statements and References Contained in Plaintiffs' Response*  (ECF 58)

          i.      <u>All references to Harley Gilliam are immaterial, not relevant, hearsay, and speculation</u>.  The first two pages of Plaintiffs' Response recounts an alleged sexual assault involving Garrett and Harley. (ECF 58, p. 1-2).  Plaintiffs outline "facts" related to Harley's case, and attempt to connect Harley's case to Sarah's alleged sexual harassment.  Specifically, Plaintiffs allege (without support) that Kirk should have been aware that Harley's allegations were substantiated by the Department of Child Services, and if Kirk was aware that Harley's allegations were substantiated, then Kirk *would have* expelled Garrett (ECF 58, p. 2-3).  As a result, "Garrett would not have been in school at North Central when Sarah's sexual assault was reported and this case would never have been filed on her behalf." (Resp. at 3).  By this, the School understands Plaintiffs to argue Garrett's presence at school was the cause of her claims.  Plaintiffs' reasoning is speculative, irrelevant, and cannot defeat summary judgment.  First, in reliance upon Kirk's testimony, Plaintiffs speculate as to what might have happened had the School learned that Harley's allegations were substantiated. In truth, Kirk testified that depending on the information provided by law enforcement, which he never received, he may have suspended or expelled Garrett.  (ECF 59-1, p.24:2-12)[4]  Speculation is barred and should be stricken.  *See* F.R.E. 701. Finally, as will be discussed more fully *infra*, the School was not required to take specific action (i.e. expulsion) under Title IX jurisprudence.  The School was not required to prevent (or even remedy) peer-to-peer harassment, but instead, to respond in a manner that was not clearly unreasonable.  *See Davis,* 526 U.S. at 649 (stating "Title IX imposes no such requirements" to remedy peer harassment").  The

---

[4] It is noteworthy that defense counsel objected to this questioning as speculative.  However, contrary to ECF 6 regarding deposition excerpts, Plaintiffs failed to provide the full text of this area of examination.

question is not whether some speculative course of events, in a metaphysical way, could have prevented the peer-to-peer harassment; only whether the School's response to actual notice of the alleged harassment was clearly unreasonable.  Plaintiffs' speculation seeks to address the source of the alleged harassment and is irrelevant.   Although Plaintiffs are entitled to all reasonable inferences in her favor, inferences that are supported by speculation or conjecture will not defeat summary judgment.  *Herzog v. Graphic Packaging International, Inc.,* 742 F.3d 802, 806 (7th Cir. 2014); *see also Springer v. Duflinger,* 518 F.3d 479, 484 (7th Cir. 2008) (stating "speculation may not be used to manufacture a genuine issue of fact.").  Lastly, since the undisputed evidence shows that Garrett did not sexually harass Sarah after the assault(s) was/were reported, it is immaterial whether Garrett would have been expelled had the School known that Harley's claims were substantiated.

   *ii.*  <u>"Leslie testified that she was unaware of a "no contact" order even being issued.  (Hawker Dep., p. 13).</u>" (ECF 58, p. 3).  Plaintiffs designate page 13 of Leslie's deposition testimony in support of the assertion that Leslie did not know about a no-contact order being issued.  However, page 13 makes no mention whatsoever of a no-contact order (ECF 59-4, p. 2).  Any reference to Leslie being unaware of a no-contact order is unsupported by the record and must not be considered. Thus, Mr. Kirk's testimony that he "discussed the NCO with Leslie and Garrett's parents to make sure they knew that Sarah and Garrett were not to have contact with one another at school" is undisputed.  ECF 47-2, ¶ 27-28.  Most importantly, Sarah and Garrett both admitted being aware of the no-contact requirements (ECF 47-33, p. 91, Exhibit K, at 109:10-22); ECF 47-23).

   *iii.*  <u>"Sarah was suffering from severe anxiety and depression from the…heckling of students in the school according to her physician, Dr. Pino… (Hawker Dep., p. 58)</u>" (ECF 58, p. 4).  Plaintiffs' assertion that Sarah was being heckled by other students in school and the heckling caused or contributed to severe anxiety and depression is unsupported by testimony cited by Plaintiffs.   Contrary to Plaintiffs' statement, Leslie's deposition testimony does not support

Plaintiffs' statement that the alleged heckling caused her to suffer severe anxiety and depression. (ECF 59-4, p. 8). Because Plaintiffs' statement is unsupported by the record, it must not be considered. Further, reference to Dr. Pino's statement that Sarah was subjected to "heckling of students in school" is hearsay to the extent offered to prove students heckled Sarah.

        *iv.*     *"Leslie Hawker testified that she and Sarah found out pretty quick that NESC wasn't going to make Garrett take homebound classes or do anything such as internet studies because he would be ineligible to play football. (Hawker Dep., p. 61)."* (ECF 58, p. 4). Leslie's assertion that the School did not alter Garrett's schedule because he would be ineligible to play football is pure conjecture. Indeed, the testimony cited by Plaintiffs reveals that nobody from the School told her that Garrett was not going to be taken out of school because of football (ECF 59-4, p. 9, lines 19-21). Further, the undisputed facts demonstrate football was not a factor. (ECF 47-13, ¶¶ 19-20; ECF 47-2, ¶ 87). Leslie's testimony, "I think the OCR investigation told me exactly that" is inadmissible hearsay. Thus, any assertion that the School's refused to discipline Garrett because he was a football player is unsupported by the record must be disregarded.

        *v.*     "The evidence indicates that both sexual assaults were investigated by the Sheriff's Department of Sullivan County but no written or oral reports were ever produced to NESC" (ECF 58, p. 15-16, ¶ 8). Plaintiffs fail to refer to any evidence in the record to conclude the sheriff's department provided no reports to the School on the status of the investigations. In fact, Deputy Melchert, while not sharing the intimate details of the investigation, communicated updates to Mr. Kirk, including that charges against Garrett would not be filed. (ECF 47-21, ¶ 17-19; ECF 47-2, ¶ 29, 30).

**III.    THE SCHOOL IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS HAVE FAILED TO DESIGNATED EVIDENCE SUPPORTING ALL ESSENTIAL ELEMENTS OF A TITLE IX CLAIM.**

A Title IX plaintiff asserting a peer-on-peer sexual harassment claim must proffer sufficient evidence of each of the following elements: (1) sexual harassment (2) that was so severe, pervasive, and objectively offensive (3) that it deprived plaintiff of access to educational opportunities or benefits provided by the school; (4) the school had actual knowledge of the sexual harassment; and (5) the school was deliberately indifferent to the sexual harassment. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999). "The Supreme Court has applied a more rigorous standard when a Title IX plaintiff seeks damages against a school district for student-on-student harassment." *Hill v. Cundiff*, 797 F.3d 948, 970 (11th Cir. 2015). *Davis* creates a very high burden for a plaintiff to prevail in a Title IX action, especially with regard to proving deliberate indifference. "This standard does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to [the] abuse." *Patterson v. Hudson Area Sch.*, 551 F.3d 438, 451 (6th Cir. 2009) (Recognizing that "[a]lthough this is a sad case, the plaintiffs have clearly not met the high legal standard for deliberate indifference" citing *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 1989 (Stevens, J., dissenting) (noting that only "few Title IX plaintiffs ... will be able to recover damages under this exceedingly high standard").

Contrary to *Davis*, Plaintiffs' case for Title IX liability against the School is two-fold.  The School should be liable because: (1) it did not suspend or expel Garrett immediately following the reporting of the "rape" on November 5, 2015 (ECF 58, p. 4); and (2) Garrett and other students engaged in specific acts of sexual harassment reported on and after January 8, 2016. (ECF 58, pp. 7-9; ECF 47-2, ¶ 47).

Plaintiffs' Response fails to address their claims within the rigorous legal framework established by *Davis* and fails to meet the exacting burden placed on a plaintiff to prove his/her case.

Instead, Plaintiffs' Response is tantamount to asking this court to deny the School's motion for summary judgment by imposing a strict liability or negligence standard. In essence, Plaintiffs ask this Court to deviate from *Davis* and to find a triable Title IX claim *anytime* a student reports an unsubstantiated off-campus rape and the School declines to immediately suspend or expel the accused, or otherwise discipline the accused student by suspending him from athletics and changing his schedule regardless of his graduation requirements. *Davis* does not require an institution to go to such lengths. Instead, the educational institution must respond in a manner that is not clearly unreasonable. Plaintiffs also seek to undermine the high bar purposefully set in *Davis* when they claim that there were subsequent acts of sexual harassment that prompt investigation by the School has proven –through an undisputed record—did not occur.

## A. The School Was Not Deliberately Indifferent When It Did Not Immediately Suspend or Expel Garrett.

Sarah insists —regardless of whether the sex with Garrett constituted rape[5]—that from the moment Leslie reported the matter to the School, Title IX was continually violated when Garrett was not immediately expelled or placed on social probation and removed from the football team.[6] (ECF 47-2, ¶30; ECF 58, p. 4). Plaintiffs contend the School should have immediately punished Garrett based solely on Leslie's report that Sarah was raped off-campus the prior year and before the School or legal authorities had a reasonable opportunity to commence (much less complete) an investigation. Notably, Leslie's initial report to Kirk in November 2015 failed to state any specific instances of sexual harassment or misconduct between Garrett and Sarah even though they had shared classes together since December 2014. (ECF 47-2, ¶¶ 10, 21). Plaintiffs' Response highlights

---

[5] Rape is defined as: "a person who knowingly or intentionally has sexual intercourse with another person or knowingly or intentionally causes another person to perform or submit to other sexual conduct (as defined in IC 35-31.5-2-221.5) when: (1) the other person is compelled by force or imminent threat of force; (2) the other person is unaware that the sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) is occurring…" Ind. Code Ann. § 35-42-4-1 (West).

[6] The alleged rape was reported to the School the night of November 5, 2015. The last football game of the season was the evening of November 6, 2015.

the fact that "on the very day of the report" to the School, Leslie demanded the School take swift

disciplinary action against Garrett, including expulsion. (ECF 59, p. 4).  Acting on the advice of

counsel, the School did not have sufficient grounds to suspend or expel Garrett and could not change

some of his classes without materially affecting his graduation requirements.

Contrary to what Plaintiffs would lead this Court to believe, the School did not stand idly by

and do nothing in response to Leslie's report.  It took the matter so seriously that, instead of leaving

the investigation and response to a myriad of Leslie's complaints to Nolting (assistant principal),

both Kirk (principal) and Baker (Superintendent) – in conjunction with legal consultation—handled

the matters.  Despite no actual knowledge or reported issues between Garrett and Sarah (between

December 2014 and November 2015), immediately following the report of  the "rape", the School

put a no-contact order in place (ECF 47-2, ¶ 26), notified Leslie and Garrett's parents of the no-

contact order (ECF 47-2, ¶¶ 26, 28), made Sarah and Garrett aware of the no-contact order (ECF

47-33, p. 91, Exhibit K at 109:10-22, ECF 47-23), requested to interview both Sarah and Garrett

(ECF 47-2, ¶¶ 30-31, 69, 70b-c, 74), and Kirk spoke with the sheriff's deputy investigating the case

"at least a dozen" times in November 2015. (ECF 47-24, p. 35, depo p. 35, lines 7-18; ECF 47-2, ¶¶

35).

Additionally, the School promptly and appropriately responded to and handled each concern

and request from Sarah or Leslie, including:

- Being receptive to every communication and complaint from Leslie and Sarah and then responding and trying to conduct an investigation (ECF 47-2, Exhibit B, Monty Kirk Affidavit, paragraphs 30, 31, 69, 74; ECF 47-32, Exhibit J-3, Letter to Leslie Hawker dated 1/27/16 from Monty Kirk).
- Following Dr. Pino's "medical order" to put Sarah on "home bound" education plan (ECF 47-2, Exhibit B, Monty Kirk Affidavit, paragraphs 32-34)
- Allowing Sarah to attend BETA activities even though she was not in class all day, which was an exception from the typical school policy (ECF 47-2, Exhibit B, Monty Kirk Affidavit, paragraph 43).
- Excusing Sarah from final exams (ECF 47-2, Exhibit B, Monty Kirk Affidavit, paragraph 44).

- Offering several times over subsequent months to interview Sarah (ECF 47-2, Exhibit B, Monty Kirk Affidavit, paragraphs 31, 69, 70 (b), 70 (c), 74).
- Allowing unfettered access to a female guidance counselor who Sarah liked (ECF 47-2, Exhibit B, Monty Kirk Affidavit, paragraph 75).

Contrary to Plaintiffs' claims, it is self-evident from Leslie's letter, dated March 17, 2016, that the School's response to the situation was not "clearly unreasonable."  In that letter, Leslie praises Sarah's teachers stating that they "made it possible for Sarah to have normalcy of being a junior in high school second semester" and "all of you have shown Sarah support and comforted her, … [i]t made her feel safe …" (ECF 47-2, Exh. B at ¶ 67).

These are undisputed facts and no reasonable juror could find the School's response to Leslie's report of Sarah being raped, even if imperfect in Plaintiffs' opinion, to be so <u>clearly unreasonable</u> under the known circumstances to rise to the level of deliberate indifference.

Plaintiffs appear to contend that allowing Garrett's mere presence in the school, *in any capacity*, violated Title IX.  Several district courts in other jurisdictions have found that an alleged perpetrator's mere presence at school is not actionable under Title IX.  See, e.g. *Yoona Ha v. Nw. Univ.*, 2014 WL 5893292, at *2 (N.D. Ill. 2014) (on appeal) ("an occasional glimpse" of alleged perpetrator at school and "knowledge of [his] presence on the campus caused her considerable grief" are not sufficient to support a Title IX claim."); *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 613-14 (E.D. Pa. 2014) (Plaintiff's Title IX claim dismissed where her only allegations of subsequent harassment were that her harasser "followed her, sat outside her dormitory, and...stood directly beside her [in the cafeteria] and stared at her while she was having a conversation with a fellow student"); *Thomas v. Meharry Med. Coll.*, 1 F. Supp.3d 816, 827 (M.D. Tenn. 2014) ("[B]ecause plaintiff did not continue to experience sexual harassment once he put defendant on notice of [his harasser's] conduct, there is no basis to find defendant's response to plaintiff's sexual harassment report amounted to deliberate indifference.").  Notably, the School received no reports of specific

instances of Garrett harassing Sarah at school or off-campus until February, 2016 (ECF 47-2, ¶ 47). Garrett's mere presence at school, under a no-contact order, is not sufficient to support Title IX liability.

The claim that the School failed to take appropriate action against Garrett in response to the sexual assault report fails because Title IX liability depends on the presence of several elements, including the School's actual knowledge of sexual harassment. *Davis,* 526 U.S. at 629. Simply because Sarah's grandmother reported to the School that she had been raped off-campus by another student does not constitute actual knowledge of sexual harassment. Sexual harassment must take place in a context subject to the School's control. *Davis*, 526 U.S. at 630. This places a limitation on Title IX liability to circumstances where the School "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id*

Even if Garrett's continued presence at School, despite the School's taking precautions to separate Garrett from Sarah, could constitute sexual harassment (which it does not), Plaintiffs' impermissibly attempt to have this Court second-guess the appropriateness of its response to Leslie's report of Sarah being raped. "[C]ourts have no roving writ to second-guess an educational institution's choices from within a universe of plausible investigative procedures." *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 175 (1st Cir. 2007), rev'd and remanded on other grounds, 555 U.S. 246 (2009). "Title IX is not an invitation to second-guess disciplinary decisions…'Rather, Title IX should be construed to give school administrators the flexibility they require' to initiate a reasonable disciplinary response." *Rossley v. Drake University*, 342 F.Supp.3d 904 924-25 (S.D. Iowa 2018) *quoting Davis*, 526 U.S. at 648–49.

The importance of allowing the School flexibility to determine appropriate discipline and investigative measures is highlighted by the fact Leslie made several false allegations to bolster her narrative that Sarah was forcibly raped and Garrett was a dangerous individual. For example, on

November 6, 2015, Leslie sent an email to Kirk and Sarah's teachers at NCHS to tell them that the Indiana State Police ("ISP") "believe there probably are many more victims, but will interview Sarah Friday morning…. (ECF 47-29, Exh. J at 76:25, 77:1-7, 78-79). Even though Leslie had not yet spoken to anyone from the ISP, she falsely reported to Mr. Kirk and his staff that the ISP had told her that they believed there were many more victims. (ECF 47-29, Exh. J at 79:9-22)[1]. Ultimately, Leslie never attempted to contact the ISP and never spoke to anyone with the ISP concerning Sarah's allegations (ECF 47-29, Exh. J at 88: 12-20). Leslie also falsely reported the following incidents: She accused Garrett of intentionally running into Sarah in the School hallway on March 15, 2016. This is false, as demonstrated by the undisputed video evidence and testimony of Kirk and Deputy Holmes. (ECF 47-2, Exh. B at ¶60-64; ECF 47-19, Exh. E at ¶¶7-9). She reported that Sarah had a confrontation with students and was being harassed by Garrett and another student in the hallway outside of the automotive classroom. (ECF 47-29, Exh. J at 231:10-13). This is false, as the undisputed video evidence shows Sarah walking at a normal pace down the hallway with no students following or chasing her. (ECF 47-2, Exh. B ¶¶56-59). She accused Garrett of intentionally sitting behind her during a basketball game in order to intimidate her. (ECF 47-29, Exh. J at 16:16-23; ECF 47-33, Exh. K at 136:22-25, 137:1-13). This assertion was speculation and contradicted by Sarah's and Kirk's testimony. (ECF 47-33, Exh. K at 137:17-22; ECF 47-2 at ¶¶71-72). She falsely accused the School of getting a protective order modified so Garrett could return to School. (ECF 47-29, Exh. J at 145:5-25, 146:1-4). This pure speculation was refuted by the undisputed testimony of Dr. Baker. (ECF 47-13, Exh. C at ¶13).

---

[1] Leslie admitted in her deposition that her email on November 6 contained a false statement about the ISP (ECF 47-29, Exh. J at 79:9-15).

*Materiality of Underlying Rape Claim*

Without any supporting legal authority, Plaintiffs contend that the truthfulness of Sarah's assertions about being raped off-campus are immaterial because the School would not have known in November 2015 that the rape allegations were unsubstantiated. (ECF 58, p. 3). Contrary to Plaintiffs' Response, whether Sarah was forcibly raped off-campus is material. First, her underlying claim of being forcibly raped bears on the material issue of her claims that Garrett's mere presence constituted sexual harassment. For there to be Title IX liability, a plaintiff must show harassment that is "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victims are effectively denied equal access to an institution's resources and opportunities." *Davis,* 526 U.S. at 631. The undisputed evidence is that CPS, the forensic interviewer, and law enforcement did not believe Sarah's history of events warranted criminal charges of any nature to be filed with the prosecutor's office. (ECF 47-21, Exh. F, ¶ 16). In the absence of a substantiated rape, her future association with Garrett is cast in a whole new light. Attending School with someone who did not forcibly rape her is an entirely different scenario that impacts whether the subsequent alleged on-campus conduct by Garrett was so severe, pervasive that it undermined her educational experience to the point where the School was effectively denying her access to its resources and opportunities. Further, if a forcible rape did not happen, which the undisputed evidence shows it did not, then the School should not be held accountable for its response even when it did not know the rape allegations were unsubstantiated at the time of the response. *See Klemencic v. Ohio State Univ.*, 263 F.3d 504, 511 (6th Cir. 2001) (holding that Title IX actions against institutions are not sustainable where the underlying sex discrimination alleged did not happen). At most, the School should only be held to answer for its response after the first reporting of *on-campus* harassment *following* the reporting of the alleged rape.

**B. The School's Response to Specific Reports of Alleged Harassment Was Not Clearly Unreasonable.**

In addition to claiming Garrett's general presence at School violated Title IX, Plaintiffs also list specific instances of purported harassment by Garrett and other students that does not give rise to Title IX liability. None of the specific incidents constituted sexual harassment. However, even if considered sexual harassment, the School responded reasonably to each reported incident and there is no evidence to support a conclusion the School's response to the specific incidents was clearly unreasonable. "The fact that subsequent interactions between [the perpetrator and victim] occurred does not render the School…deliberately indifferent. To avoid Title IX liability, an educational institution must act reasonably to prevent future harassment; it need not succeed in doing so." *Fitzgerald*, 504 F.3d at 175 citing *Davis,* 526 U.S. at 648 (explaining that a school need not purge itself of peer-on-peer harassment entirely in order to avoid Title IX liability). Here, the School responded reasonably (and under no circumstance was its response clearly unreasonable) to each specific instance of harassment.

*i.    February 28, 2016 Tweet/Text Message from Mikaella*

Sarah claims that one of Garrett's friends, Mikaella, texted[7] her (ECF 58, p. 8). However, Plaintiffs do not elaborate on the substance of the text(s).[8] Moreover, Sarah's deposition testimony (cited by Plaintiffs) states "I don't know what was said." (ECF 59-9, p. 26 (Depo. page 119)). Defendants proffered evidence that Sarah's grandmother emailed Kirk on February 28, 2016, to report Mikaella sent an unkind tweet. (ECF 47-2, ¶ 75). Kirk met with Sarah and her grandmother the very next day to discuss the allegation. (ECF 47-2, ¶ 75). Kirk sent the tweet to law enforcement and communicated to the grandmother that after consultation with legal counsel, Mikaella would

---

[7] The record is inconsistent and refers to the message as a tweet and text interchangeably.
[8] Plaintiffs also claim that the unidentified texts came from Garrett through Mikaella. However, this is speculation and should be stricken or disregarded.

not be disciplined for the tweet.  The School promptly investigated the alleged offending tweet by meeting with Sarah and her grandmother the day after it was reported, involved law enforcement, and consulted with counsel.  Clearly, even if the alleged offending tweet could be considered sexual harassment (which there is no evidence supporting it was), the School's response cannot be said to have been clearly unreasonable.

    ii.       *February 29, 2016 Claim that Automotive Students Laughed At Sarah*

Sarah claims that a "group of [Garrett's] classmates and friends pounded on the door and [she] opened the door and Garrett's classmates were all laughing at her." (ECF 58, p. 8).  She "felt like there were a lot of people around her and she had to rush to get back to her class." (ECF 58, p. 8).  The School has extensively described this alleged incident in its designation of evidence (ECF 47-2, ¶¶ 49-58).  Sarah's account of this purported incident is contradicted by the video evidence and the Court should not accept her account for purposes of summary judgment.  *Gillis v. Pollard*, 554 Fed.Appx. 502, 506 (7th Cir. 2014) ("The Supreme Court has since held that where video evidence contradicts the plaintiff's version of events, the court should not accept the plaintiff's story for purposes of summary judgment.").  Even if Sarah's allegation was true, the School's response was certainly not clearly unreasonable.  On February 29, 2016, the day Kirk received the report of the hallway harassment from Leslie, he promptly investigated the claim (ECF 47-2, ¶¶ 50).

Moreover, even if Sarah's exaggerated account of what transpired was true, Plaintiffs have designated no evidence that students were laughing at her or that the laughing constituted *sexual* harassment, which is a necessary element to her Title IX claim.  Sarah's concern that the laughing or whispering may have been about her is pure conjecture and inadmissible.

    iii.      *March 15, 2016 Hallway Claim*

Sarah claims that Garrett "looked at her and glared at her and got in real close in a crowd and brushed her when she was on her way to class." (ECF 58, p. 8).  The School explained the report

of this incident and its response thereto extensively in its supporting brief and designation of evidence. (ECF 47-2, ¶¶ 60-65; ECF 47-19).  This claim, just like the claim of harassment by automotive students, is contradicted by video evidence.  Moreover, the School's response to the report was not clearly unreasonable.  Law enforcement came to the School, reviewed the video, and determined Garrett did nothing wrong.  Kirk, after careful review of the video coupled with Sarah and her grandmother's report, came to the same conclusion as law enforcement.

> iv.    *Alleged Basketball Game Incident*

Finally, Sarah claims that while she attended a basketball game (on an unknown date) with her mom and Leslie, Garrett sat behind her and "Sarah felt intimidated by him being there." (ECF 58, p. 9).  Sarah cannot recall when the incident occurred and cannot recall whether she was still enrolled as a student. (ECF 59-9, p. 136, lines 19-20).  The School did not receive a report about this alleged incident until February 17, 2016. (ECF 47-2, ¶ 70c, 71-72).  Kirk was present at the basketball game and watched Garrett closely. (ECF 47-2, ¶¶ 71).  Garrett did not sit directly behind Sarah. (ECF 47-2, ¶ 71).  Moreover, Kirk actually spoke with Leslie during the basketball game and she never mentioned Garrett making any comments or otherwise bothering Sarah-she was upset simply because Garrett was allowed to attend the basketball game. (ECF 47-2, ¶¶ 72).  Importantly, Kirk promptly acknowledged Leslie's complaint, advised her he wanted to investigate the alleged incident, and requested to interview Sarah.  (ECF 47-2, ¶ 70c).

The undisputed material facts demonstrate the School responded reasonably to all specific complaints of harassment by Leslie.  Even if the School's response was not exactly what Leslie (and Sarah) wanted, no reasonable jury could find it clearly unreasonable.  See *Fitzgerald*, 504 F.3d at 174 ("Title IX does not require educational institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by parents. The test is

objective—whether the institution's response, evaluated in light of the known circumstances, is so deficient as to be clearly unreasonable.")

### C. Rebekah's Claim Fails as a Matter of Law.

Plaintiffs attempt to save Rebekah's claim by arguing Garrett's presence at the School "made her more vulnerable to [harassment] or made her more likely to experience it."  (ECF 58, p. 17). Plaintiffs' claim is without merit because Rebekah testified that she was not harassed, bullied, and did not want to be removed from the School by Leslie.  (ECF 49, pp. 20-21).  Further, there are no facts supporting the conclusion that Rebekah was vulnerable to harassment or was likely to experience harassment.  Moreover, *Davis* does not allow claims like Rebekah's to proceed.  The School's duty is restricted to responding to severe sexual harassment to which it has actual knowledge.  Here, Rebekah endured no sexual harassment, the School had no knowledge of any sexual harassment, and was under no duty to respond.

### IV.   CONCLUSION

Plaintiffs response fails to address their claims within the rigorous legal framework established by *Davis* and fails to meet the exacting burden placed on a plaintiff to prove liability under Title IX.  Instead, Plaintiffs ask this court to impose strict liability or negligence standard by claiming a Title IX violation *anytime* a student reports an unsubstantiated off-campus rape and the School fails to immediately expel the accused, kick the student out of athletics or change the accused's school schedule even if it affects graduation requirements.   Plaintiffs seek to undermine the high bar purposefully set in *Davis*.  Even if the School's responses to sexual harassment for which it had actual knowledge were not optimal in Plaintiffs' view, they were not so clearly unreasonable as to be deliberately indifferent to Plaintiffs, as is required to make a claim under Title IX.  Because the undisputed facts demonstrate that Plaintiffs cannot meet the high burden placed to make a Title IX claim, NESC is entitled to judgment as a matter of law.

Respectfully submitted,

**COOTS, HENKE & WHEELER, P.C.**


/s/ Matthew L. Hinkle
Matthew L. Hinkle, #19396-29
John V. Maurovich, #28672-29
*Attorneys for Northeast School Corporation and North Central High School*


## CERTIFICATE OF SERVICE

I hereby certify that on the **May 24, 2019**, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operations of the Court's electronic filing system.

Eric A. Frey
Frey Law Firm
401 Ohio Street, Ste. B13
Terre Haute, IN 47807
freylaw@aol.com
*Attorney for Plaintiffs*

Paul Jungers
WAGNER, CRAWFORD,
  GAMBILL & JUNGERS
416 S. 6th St.
Terre Haute, IN 47807
paul.jungers@gmail.com
*Attorney for Plaintiffs*

/s/ Matthew L. Hinkle
Matthew L. Hinkle, #19396-29
John V. Maurovich, #28672-29


**COOTS, HENKE & WHEELER, P.C**.
255 East Carmel Drive
Carmel, IN 46032
Tel: (317) 844-4693
Fax: (317) 573-5385