UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SARAH JOHNSON, et al. | ) |
| Plaintiffs, | ) |
| v. | ) No. 2:18-cv-00068-JRS-MJD |
| NORTHEAST SCHOOL CORPORATION, et al. | ) |
| Defendants. | ) |

**Order on Summary Judgment Motion**

Plaintiffs Sarah Johnson and Rebekah Johnson sue Defendants Northeast School Corporation and its North Central High School in Sullivan County, Indiana, alleging they subjected Plaintiffs to discrimination on the basis of sex in violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a). Plaintiffs allege Defendants failed to respond appropriately when Sarah reported she had been sexually assaulted by another student and then when Rebekah was subjected to harassment and bullying because she was Sarah's sister. Plaintiffs also bring a state-law claim alleging that Defendants failed to have an anti-bullying policy. Defendants have moved for summary judgment on all claims.

While sexual harassment should not be tolerated in any environment and any sexual assault is to be condemned, NCHS is not a proper defendant in this action. Plaintiffs have come forward with insufficient evidence to hold the School

1

Corporation liable under Title IX for any alleged sexual harassment of Sarah or Rebekah. Therefore, Defendants' Motion for Summary Judgment will be granted.

## I. Background

Sarah Johnson claims that while she was a student at North Central High School ("NCHS") in Sullivan County, Indiana, she was sexually assaulted off campus on December 17, 2014, by another student, Garrett Froshauer, and his friend, Romeo Risley. Sarah did not report the alleged sexual assault until November 5, 2015. She alleges that Garrett bullied her in school and that she withdrew from NCHS because of that bullying. Rebekah is Sarah's younger sister and was also a student at NCHS. Rebekah alleges that she too was bullied by Garrett and his friends.

Northeast School Corporation (the "School Corporation") is an Indiana public school corporation within the Southern District of Indiana. At all relevant times, Monty Kirk was the high school principal. During the 2014-15 academic year, Sarah was a high school sophomore. Garrett Froshauer was a sophomore that year too; he and Sarah had three classes together. Ms. Hawker is Sarah's and Rebekah's grandmother.

The NCHS School-Family Handbook, which is provided to students each year, sets forth a "Code of Conduct" and prohibits harassment and bullying by students. (ECF No. 47-11, 37–38.) Harassment/bullying is defined to include "any speech or action that creates a hostile, intimidating, or offensive learning environment." (ECF No. 47-11, 37.) Students who believe they are victims of harassment or bullying are

2

instructed to report the matter to school staff. ([ECF No. 47-11](), 38.) Students may make such a report in writing, over the phone, or in person.

Sarah's alleged sexual assault by Garrett was first reported to school authorities on November 5, 2015, when her grandmother, Ms. Hawker, reported it to Principal Kirk. Ms. Hawker advised Kirk that she and Sarah were going to report the incident to the authorities. They reported the incident to the Sullivan County Sheriff's Department and were told that Deputy Carl Melchert would be handling the case. Deputy Melchert and Child Protective Services went to Ms. Hawker's house the next day, and Ms. Hawker reported that Sarah had been raped by Garrett.

The next day, November 6, 2015, Principal Kirk confirmed with Ms. Hawker that the authorities had been notified. ([ECF No. 47-2]() ¶ 29.) Ms. Hawker advised Kirk that she wanted Garrett immediately removed from school. Principal Kirk explained to her that there needed to be an investigation before a decision about potential disciplinary action could be made. ([ECF No. 47-2]() ¶ 30.) Ms. Hawker also advised Principal Kirk that Sarah was going to be interviewed by a trained child interviewer at Susie's Place and informed him that she did not want school officials to interview Sarah. ([ECF No. 47-2]() ¶ 30.) The principal confirmed with Deputy Melchert that the matter was being investigated and that Sarah was to be interviewed at Susie's Place.

Also on November 6, Principal Kirk issued a No Contact Order between Sarah and Garrett to remain in effect for the remainder of the school year. ([ECF No. 47-2](), ¶¶ 26–28.) The No Contact Order was explained to both Garrett and Sarah ([ECF No. 47-23](), ¶¶ 2-3; [ECF No. 47-3](), 109) and the order was distributed to their teachers to

3

make them aware of it and to have the teachers assist in enforcing it (ECF No. 47-2, ¶ 27). Although Sarah testified that she never saw the No Contact Order, she admitted she was informed of it and understood that Garrett was to have no contact with her. (ECF No. 47-33, 91.) Principal Kirk discussed the No Contact Order with Ms. Hawker and Garrett's parents that day to make sure they knew that Sarah and Garrett were not to have contact with each other at school. (ECF No. 47-2, ¶ 28; 47-24, 33.)[1]

During the month of November, Principal Kirk contacted Deputy Melchert on several occasions—"at least a dozen times"—requesting to be kept informed of the investigation into the allegations against Garrett. (ECF No. 47-24, 35.) The deputy did not share the details of the investigation with Principal Kirk, other than to advise that the complaining student was going to give a forensic interview. On November 24, 2015, Sarah was interviewed at Susie's Place about the alleged rape. Deputy Melchert observed the interview from another room. As a result of the investigation, the interviewer, the Child Protective Services case worker assigned to the case, and the deputy concluded that no criminal charges needed to be filed with the Prosecutor's Office. After the decision was made, Principal Kirk learned that no charges would be filed against Garrett. (ECF No. 47-2, ¶ 68.)

In late January 2016, Principal Kirk sent a letter to Ms. Hawker to attempt to give her the opportunity to allow the school to interview Sarah as part of its Title IX

---

[1] Plaintiffs' brief asserts that Ms. Hawker testified that she was unaware of a "no contact" order having been issued, but the cited deposition (Hawker Dep. 13) does not support that assertion. As a result, Plaintiffs have not raised a genuine issue of fact. Similarly, other factual assertions in Plaintiffs' brief that are not actually supported by the cited evidence are likewise disregarded.

investigation. (ECF No. 47-2, ¶ 69.) Ms. Hawker would not allow Sarah to be interviewed by school officials, however. (ECF No. 47-29, 87–89.)

After Sarah's allegation against Garrett was reported on November 5, the first harassment incident that Ms. Hawker brought to the school's attention did not involve Garrett. (ECF No. 47-2, ¶¶ 46–47.) On January 8, 2016, she emailed Mr. Kirk to advise that on January 6, Sarah had received a report from someone that a girl (C.D.) had told "others" that she was going to "kick Sarah's ass." Principal Kirk ensured that Sarah could eat lunch in the office and otherwise sit in the office if she wanted a break from class. He spoke with C.D., and even though C.D. denied making the threat, he instructed her not to have any contact or communication with Sarah that could be perceived as negative or hostile. (ECF No. 47-2, ¶ 47.)

On February 28, 2016, Ms. Hawker emailed Principal Kirk to advise that one of Sarah's fellow female cheerleaders (M.S.) sent an unkind tweet. (ECF No. 47-2 ¶ 75.) The next day, Ms. Hawker and Sarah met with Mr. Kirk to discuss the matter. (ECF No. 47-2 ¶ 75.) During their meeting, Principal Kirk asked Sarah and Ms. Hawker if anyone was harassing her—whether in person or on social media. They responded that nothing else had been happening at school. (ECF No. 47-2 ¶ 75.) Mr. Kirk reminded them that if something else happened, to report it immediately.

From November 6, 2015, through February 28, 2016, neither Sarah nor Ms. Hawker made any complaint that Garrett was harassing Sarah at school or off campus. It was not until February 29, 2016, that Sarah and Ms. Hawker made a complaint about Garrett. (ECF 47-2, ¶¶ 46, 49.) Ms. Hawker called Principal Kirk that

day to report that Sarah was upset because she had been confronted by auto shop students and harassed by Garrett and another boy in the hallway. (ECF 47-2, ¶ 57.) However, video of the incident shows that Garrett was not involved. (ECF 47-2, ¶¶ 58-59, 63-64.) When a videotape of the alleged incident contradicts the plaintiff's version of the incident, the court may properly find that no reasonable trier of fact could believe plaintiff's version of the incident. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment" and the court should have relied on the videotape). Sarah's own testimony is that Garrett was not involved. She testified that while returning from using the restroom during choir class, she heard students knocking on an entry door close to the choir room. (ECF 47-33, 67.) When Sarah opened the door, she did not see any students she recognized and did not see Garrett among the students. (ECF 47-33, 72.) After opening the door, Sarah turned her back to the students and heard some whispering and laughing. (ECF 47-33, 68.) She thought the students were laughing at her simply "[b]ecause they were laughing." (ECF 47-33, 73.) Sarah admits they could have been laughing about anything and that she was not "chased," but it "kind of" felt that way because there were a lot of people around her. (ECF 47-33, 73, 76.) This was one of the few incidents that Sarah characterized as harassment and bullying at school. (ECF 47-33, 78.)

On March 15, 2016, Ms. Hawker and Sarah claimed that Garrett had violated the protective order by glaring at her, getting "real close," and brushing by her as he passed her in the hallway near the principal's office. (ECF 47-29, 47; ECF No. 47-33, 93, 98.) Deputy David Holmes responded to NCHS where he met with Ms. Hawker and Mr. Kirk in the principal's office. (ECF 47-19, ¶ 4.) The deputy found Mr. Kirk cooperative and willing to provide information, including video footage from a hallway surveillance camera of the area where Sarah described that she encountered Garrett. (ECF 47-19, ¶ 6.) Deputy Holmes reviewed the video and observed Sarah walking down the middle of the hallway and observed a male in a gray sweatshirt (identified as Garrett) walking in the opposite direction. (ECF 47-19, ¶ 7.) Garrett was close to the wall and did not get closer to Sarah or appear to turn his head, look in Sarah's direction, or glare at her. (ECF 47-19, ¶ 7; ECF 47-2, ¶ 61.) Deputy Holmes concluded that Garrett passed by Sarah in a manner that was more consistent with him trying to avoid her than trying to be close to her or intimidate her. (ECF 47-19, ¶ 8.)

At her deposition, Sarah initially could not identify any other incidents in which she thought a student bullied or harassed her at school. (ECF No. 47-33, 98–99.) However, she later recalled that at a basketball game on an unknown date, Garrett came and sat about two rows behind where she was sitting with her mother and grandmother. (ECF No. 47-33, 115–118.) Sarah did not recall Garrett saying anything to her at the game. (ECF No. 47-33, 118.) Eventually, Sarah withdrew from the school. (ECF No. 47-24 at 43.)

## II. Evidentiary Objections

Defendants have raised several objections to evidence on which Plaintiffs rely. The objections to the declaration of Esther Warkov are well-taken: she was not timely disclosed as an expert witness under Rule 26(a)(2) as required by the Case Management Plan. (*See* [ECF No. 30](#), § III(F).) Nor was Warkov disclosed on Plaintiffs' Final Witness List. ([ECF No. 46](#).) Further, her declaration would not assist the trier of fact in deciding any fact at issue.

The objections to the Office of Civil Rights ("OCR") report are also well-taken: the report is not properly authenticated; and it is immaterial because the standards to establish non-compliance with Department of Education regulations are different than the standard for Title IX liability in a private right of action. *[Gebser v. Lago Vista Indep. Sch. Dist.](#)*, 524 U.S. 274, 291–92 (1998) (the school's "alleged failure to comply with the [Department of Education] regulations, however, does not establish the requisite actual notice and deliberate indifference. And in any event, the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX."). Whether the school followed its policies is also beside the point unless there is also evidence that the mere noncompliance amounted to deliberate indifference to sexual harassment, and in this case there is no such evidence.

## III. Discussion

Plaintiffs allege sex discrimination because Garrett was allowed to remain in school and take his regular classes, whereas Sarah allegedly was denied that educational opportunity. Plaintiffs assert that Garrett was a star football player, football

is a very important activity for the School Corporation, and male students like Garrett, who were on the football team, received preferential treatment. In addition, Plaintiffs allege that Garrett and other students harassed Sarah after she reported the alleged sexual assault.

Defendants move for summary judgment on the grounds that: (1) North Central High School is not a proper defendant; (2) Plaintiffs were not victims of harassment based on their sex; (3) Plaintiffs did not suffer actionable harassment under Title IX; (4) the School Corporation had no actual knowledge of various alleged acts of harassment; (5) the School Corporation was not deliberately indifferent to the alleged complaints of harassment and did not respond to the complaints in a clearly unreasonable manner or subject Plaintiffs to harassment; and (6) Plaintiffs have not stated a claim under Indiana law. Plaintiffs have not opposed the motion with respect to the state-law bullying claim, and summary judgment will be granted on that claim without further discussion.

### A. Summary Judgment

"A district court properly grants summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019), *petition for cert. filed*, (U.S. June 3, 2019) (No. 18-1504). A court must draw all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The non-movant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-movant fails to establish an essential element of his case, there is a complete failure of proof, and the movant is entitled to judgment as a matter of law. *Id.* at 323. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *see also Giles*, 914 F.3d at 1048 (stating that the non-movant must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture"). Where the "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

### B. Whether NCHS is a Proper Defendant

Plaintiffs have failed to respond directly to Defendants' argument that NCHS is not a proper defendant; they merely argue that the school receives federal funds and is therefore required to comply with Title IX. But, as Defendants assert, NCHS is not a legal entity with the capacity to be sued. *See, e.g.*, *Turpin v. Good*, 1:07-cv-1205-LJM-JMS, 2008 WL 268817, at *1 (S.D. Ind. Jan. 25, 2008); *Brownsburg Cmty. Sch. Corp. v. Natuare*, 824 N.E.2d 335 (Ind. 2005). NCHS is entitled to dismissal from this action.

### C. Title IX

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial

assistance." 20 U.S.C. § 1681(a). Schools districts that receive federal funding may be held liable for damages for student-on-student sexual harassment "only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *see also Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014) ("A peer-harassment plaintiff must demonstrate that the harassment was discriminatory, the school officials had 'actual knowledge'" of the harassment, the harassment was 'so severe, pervasive, and objectively offensive that it. . . deprive[s] the victims of access to educational opportunities,' and officials were 'deliberately indifferent' to the harassment."). Title IX, as interpreted by the Supreme Court, "impose[s] a demanding standard" for holding school districts liable for student-on-student harassment. *Galster*, 768 F.3d at 613.

Plaintiffs argue that Garrett should have been expelled based on the September 2015 allegations of sexual assault by another high school student, Harley Gilliam, against Garrett, and that his mere presence at school caused Plaintiffs to file this action. Plaintiffs further argue that if Gilliam's allegations did not justify expelling Garrett, then after Sarah reported on November 5, 2015, her sexual assault the previous December, Garrett should have been suspended or expelled from school, or at least removed from Sarah's classes. This all amounts to Plaintiffs arguing for a particular remedy. But a Title IX plaintiff is not entitled to any particular remedy, *see*

11

*Davis*, 526 U.S. at 648 ("Title IX imposes no . . . requirement[ ] to remedy peer harassment"); rather, she is only entitled to a response to "known peer harassment . . . that is not clearly unreasonable." *Id.* at 649.

Plaintiffs assert that Garrett was a star football player, football is a very important activity for the school, and male students like Garrett, who were on the football team, received preferential treatment. The evidence Plaintiffs cite in support of this assertion, however, fails to substantiate their assertion. Plaintiffs' belief that football players are treated more favorably is based on mere speculation. And the evidence of record establishes that the fact that Garrett was a football player had nothing to do with the decision respecting whether disciplinary action should be taken against him as a result of the Plaintiffs' allegations against him. (ECF No. 47-13 , ¶¶ 19-20.) This unsupported assertion therefore will be disregarded.

Plaintiffs allege sex discrimination because Garrett was allowed to remain in school and take regular classes. But, as noted, Title IX "impose[s] a demanding standard" for holding school districts liable for peer harassment, *Galster*, 768 F.3d at 613, and Plaintiff's contention that the school should have suspended or expelled Garrett immediately upon a report of sexual assault ignores the demanding standard of Title IX. The evidence does not establish that before Sarah's alleged off campus sexual assault in December 2014, the School Corporation had any notice or opportunity to prevent that assault. Other courts have concluded that "an occasional glimpse" of an alleged perpetrator on school grounds and "knowledge of [his] presence" at school did not amount to a Title IX violation. *See, e.g.*, *Yoona Ha v. Nw. Univ.*, No. 14 C 895,

2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014). The Court finds that Garrett's presence at school is not enough to hold the School Corporation liable.

1. **Harassment Based on Sex**

To prevail on a student-on-student harassment claim under Title IX, a plaintiff must prove that she was subjected to discriminatory behavior, that is, harassment based on her sex. *Davis*, 526 U.S. at 643 (noting funding recipients may be held liable for the discriminatory acts of certain nonagents); *Galster*, 768 F.3d at 617 (Title IX protects students from harassment only if the harassment is based on sex). Three reports to the school about student harassment of Sarah had nothing to do with Sarah's sex. One female student, C.D., had threatened to "kick Sarah's ass." (ECF 47-2, ¶ 47.) Another female student, M.S. authored an unkind tweet about Sarah that mentioned a false accusation of rape. (ECF 47-2, ¶ 75.) In another alleged incidence of harassment, unidentified auto shop students encountered Sarah in the hallway. (ECF 47-33, 84:2-10.) No evidence suggests any of these incidents were based on Sarah's sex. In addition, the other two alleged incidents of harassment by Garrett—his passing her in the hallway near the principal's office and sitting a few rows behind her at the basketball game—appear to have nothing to do with her sex either, much less could they be construed to be harassment. Sarah's Title IX claim fails to create a genuine issue of material fact for trial as to this element. Therefore, Defendants should be granted summary judgment on her claim for this reason alone.

2. **Actual Knowledge**

Yet, Sarah has also failed to prove the second element of her Title IX sexual harassment claim. The second element of a Title IX sexual harassment claim that a

plaintiff must prove is that the school had actual knowledge of the alleged sexual harassment. *See Davis*, 526 U.S. at 650. Constructive knowledge is insufficient. *See id*. at 641–43 (district cannot be held liable for harassment of which it should have known). "To have actual knowledge of an incident, school officials must have witnessed it or received a report of it." *Doe,* 768 F.3d at 614.

The initial report of Sarah's sexual assault was made to the school on November 5, 2015. That report came long after the assault. Yet, Plaintiffs attempt to hold the school liable based on the allegation that another female student had been sexually assaulted by Garrett. Even when the school was made aware of the alleged sexual assault of that other student, and the evidence is that the school first became aware of the sexual assault in September 2015 (Kirk Dep. 6, ECF No. 59-1 at 2), it is not enough to serve as a basis for the school's liability with respect to Sarah or Rebekah. In effect, Plaintiffs attempt to hold the school liable because it should have known that other female students were Garrett's potential victims. That effort fails as a matter of law. A school's Title IX obligations only commence once an event is observed by school officials or an event is reported to the school. *See Gabrielle M. v. Park Forest-Chi. Heights, IL. Sch. Dist.* 163, 315 F.3d 817, 824 (7th Cir. 2003) (school's obligations begin when they observe harassment or harassment is reported to school). The School Corporation cannot be held liable to Sarah or Rebekah for any incidents that occurred before the November 5, 2015 initial report of the alleged sexual assault. And there's another problem with Plaintiffs' position: the evidence does not raise a reasonable inference that Sarah was subject to any harassment before November 5, 2015.

The School Corporation can only be held liable for alleged acts of harassment of which it had actual knowledge. Plaintiffs' brief recounts a few situations that made Sarah uncomfortable. They assert that after Garrett told everyone about their encounter, her classmates started "reacting differently to her." ([ECF No. 58 at 7](#)–8.) They note that Sarah had to "deal with" M.S. who was close to Garrett, a cheerleader like Sarah, and who never liked Sarah in any event. (*Id*. at 8.) Specifically, they assert that M.S. was "disrespectful to" and "whispered about" Sarah. (*[Id.](#)*) Then, Plaintiffs argue that "quieted down for a while," but after the assault was reported to Mr. Kirk, "all the gossip, rumors, and talk started again." (*[Id.](#)*) To the extent that Plaintiffs allege that these incidents amount to sexual harassment, the record lacks any evidence to raise a reasonable inference that the school had actual knowledge of them. Therefore, the school should also be granted summary judgment based on the lack of any evidence to raise a genuine issue of fact on this element of Sarah's Title IX claim.

### 3. Severe, Pervasive and Objectively Offensive

But Sarah's claim under Title IX is further flawed. To prevail on a student-on-student harassment claim under Title IX, a plaintiff must also prove that she was subjected to behavior "that is so severe, pervasive and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *[Davis](#)*, [526 U.S. at 652](#); *[Galster](#)*, [768 F.3d at 617](#) (Title IX protects students from harassment only if it is based on sex). Simple teasing and name-calling, even when the comments target gender differences, are not enough. *[Davis](#)*, [526 U.S. at 652](#). That

15

the plaintiff and/or her guardian "was unhappy with the school's treatment of [the plaintiff] (and unrelated bullying) and chose to withdraw [her] as a result does not establish that [the plaintiff] was deprived of access to [her] education because of the alleged sexual harassment." Doe by *Doe v. Chi. Bd. of Educ.*, No. 15 CV 5018, 2019 WL 3554207, at *4 (N.D. Ill. Aug. 2, 2019).

Even when the evidence is viewed in the light most favorable to Plaintiffs, no reasonable jury could find that either of them was subjected to actionable sexual harassment. As noted, after November 5, 2015, Sarah and Ms. Hawker complained of only two incidents involving Garrett: he allegedly glared at her while passing her in the hallway and he sat behind her at a basketball game. (ECF No. 47-33, 111, 137.) Three other complaints were made to the school—that C.D. threatened to "kick Sarah's ass," M.S. wrote an unkind tweet, and Sarah encountered unidentified auto shop students laughing and whispering behind Sarah in the hallway.[2] None of these incidents, whether considered alone or together, is sufficiently severe, pervasive, or objectively offensive as to deny Sarah the equal access to education that Title IX is designed to protect. Three of the incidents involved students other than Garrett. That Sarah and Ms. Hawker perceived the incidents as harassment is not determinative; the alleged harassment must be objectively unreasonable. *See Davis*, 526 U.S. at 650; *Doe v. Galster*, 768 F.3d at 617; *see also Sanches v. Carrollton-Farmers Branch*

---

[2] Furthermore, Sarah merely speculates that the students were laughing and whispering about her. She testified she did not know what they were laughing and whispering about. (ECF No. 47-33, 90.) Sheer speculation is insufficient to raise a genuine issue of fact for purposes of summary judgment. *Consolino*, 872 F.3d at 830.

16

*Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) ("It makes no difference to our analysis that [plaintiff] was sincerely upset, and we assume that she was. The standard is not subjective; instead it is whether the harassment was severe, pervasive, and *objectively* unreasonable").

None of the alleged incidents of sexual harassment, even when considered together, was sufficiently severe, pervasive or objectively offensive so as to deny Sarah equal access to education. This is yet another reason the School Corporation should be granted summary judgment on Sarah's Title IX claim.

### 4. Deliberate Indifference

The final element that a plaintiff must prove to succeed on a student-on-student harassment claim under Title IX is that the school district was "deliberately indifferent to" the alleged acts of harassment. *See Davis*, 526 U.S. at 643. "[A]s long as the school's response is not 'clearly unreasonable,' it cannot have acted with the requisite deliberate indifference to incur Title IX liability." *Gabrielle M.*, 315 F.3d at 824 (quoting *Davis*, 526 U.S. at 648–49). The school district's response "must, at a minimum, cause students to undergo harassment or make them liable to or vulnerable to it." *Davis*, 526 U.S. at 645 (internal quotation and alteration omitted). Courts should afford "sufficient deference to the decisions of school disciplinarians." *Zeno v. Pine Plains Cent. Sch. Dist.*, 792 F.3d 655, 666 (2d Cir. 2012) (citing *Davis*, 526 U.S. at 648)). "[V]ictims do not have a right to specific remedial measures." *Id.* (citing *Davis*, 526 U.S. at 648)).

Here, the evidence is that within a day of the report of sexual assault by Garrett, the school entered a no-contact order, consulted with law enforcement and legal counsel, and attempted to investigate the allegation. The school did not act unreasonably by attempting to interview Sarah and Garrett or by deferring to law enforcement's own investigation. *See Rost ex rel K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1121 (10th Cir. 2008) (holding school was not deliberately indifferent to report of off-campus sexual assaults where school immediately contacted law enforcement officials, allowed law enforcement to investigate, and cooperated fully in and kept informed of the investigation). The involvement of the school with parents or guardians has also been viewed as evidence that a school district is reasonably responding to harassment. *See Galster*, 768 F.3d at 620; *Estate of Lance v. Louisville Indep. Sch. Dist.*, 743 F.3d 982, 1000–01 (5th Cir. 2014) (finding no deliberate indifference where district engaged in a "pattern of active responses" that included communicating with parents). During the relevant period, the school continually responded to Sarah's and Ms. Hawker's complaints.

The record evidence does not raise a reasonable inference, and in fact contradicts the assertion, that the School Corporation was deliberately indifferent to the alleged acts of harassment against Sarah. For this reason, too, the school should be granted summary judgment on Sarah's Title IX claim.

### D. Rebekah's Title IX Claim

The Amended Complaint alleges that Rebekah, Sarah's younger sister, was bullied by Garrett and his friends. However, the record contains no evidence that would

even begin to approach a reasonable basis to infer that Rebekah was subjected to any harassment, and there is no evidence that any complaint of harassment of Rebekah or concern about bullying of her was ever made to the school. Ms. Hawker's "fear of reprisal" against Rebekah and fear that Rebekah was vulnerable to discrimination because of "the past history of Garrett still attending the school" is based on sheer speculation, which is insufficient to raise a genuine issue of fact for purposes of summary judgment. *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017). In fact, Rebekah testified that she never felt like she was being bullied at the school, she never experienced a situation where she felt like someone was trying to threaten or intimidate her, and she agreed that she was never harassed or bullied by anyone at the school, including Garrett. (Dep. 48–49 and 51, ECF No. 47-34.) On this record, the School Corporation cannot be held liable on Rebekah's Title IX claim; the School Corporation is entitled to summary judgment on her claim as well.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 47) is **granted**. Final judgment will be entered separately.

**SO ORDERED.**

Date: 9/4/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to all registered counsel of record